## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,      )
          )
      **Plaintiff/Respondent**,     )
          )    **Case No. 11-40055-JAR**
**v.**          )    **Case No. 14-cv-4099-JAR**
          )
**ALEJANDRO OVIEDO-TAGLE,**      )
          )
      **Defendant/Petitioner.**     )
          )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Alejandro Oviedo-Tagle's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 95). In his motion, Petitioner seeks relief on grounds that he was denied effective assistance of counsel. The Government has responded (Doc. 101) and Petitioner has replied (Doc. 102). The Court held an evidentiary hearing on June 30, 2015. Having carefully reviewed the record and the arguments and evidence presented, the Court denies Petitioner's motion.

### I.    Standards

Under 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A district court may grant relief under § 2255 if it determines "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or

otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[1] "Review under § 2255 is not an alternative to appellate review for claims that could have been presented on direct appeal but were not."[2]  A movant may overcome this procedural bar by showing either of "two well recognized exceptions."[3]  First, the movant must show good cause for not raising the issue earlier and actual prejudice to the movant's defense if the issue is not considered.[4]  Cause may "be established by showing that counsel rendered constitutionally ineffective assistance."[5]  Second, the movant must show that "failure to consider the federal claims will result in a fundamental miscarriage of justice."

## II.    Factual and Procedural Background

Petitioner was charged in a Superseding Indictment with: being an illegal alien in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2); reentry of a deported alien in violation of 8 U.S.C. § 1326(a); two counts of production of false United States identification documents in violation of 18 U.S.C. § 1028(a)(1) and (b)(3); and conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A).[6]  On May 25, 2012, Petitioner entered a plea of guilty to Count 5, conspiracy

---

[1]28 U.S.C. § 2255.

[2]*United States v. Magleby*, 420 F.3d 1136, 1139 (10th Cir. 2005), *cert. denied,* 547 U.S. 1097 (2006).

[3]*United States v. Cervini,* 379 F.3d 987, 990 (10th Cir. 2004), *cert. denied*, 544 U.S. 904 (2005).

[4]*Id.*

[5]*United States v. Wiseman,* 297 F.3d 975, 979 (10th Cir. 2002) (citations omitted).

[6]Doc. 8.

2

to distribute 500 grams or more of methamphetamine.[7]  The Presentence Investigation Report

("PSIR") reflects that Petitioner's total offense level was 41, calculated as follows: base offense

level 36 (offense involving at least five kilograms but less than fifteen kilograms of

methamphetamine), two-level enhancement for possession of firearm, two-level enhancement for

methamphetamine imported from Mexico, four-level enhancement for role in offense (organizer

or leader of a criminal activity that involved five or more participants), and three-level reduction

for acceptance of responsibility. With a Criminal History category of I, his Sentencing

Guidelines range was 324 to 405 months.[8]  Under 21 U.S.C. § 841(a)(1) and (b)(1)(A), the

minimum term of imprisonment is ten years and the maximum term is life.  On April 1, 2013,

this Court sentenced Petitioner to 300 months' imprisonment, after granting the Government's

Motion to Reduce Sentence Pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e).[9]  Petitioner

was represented throughout these proceedings by Matthew B. Works.

Petitioner directly appealed his conviction and sentence to the United States Court of

Appeals for the Tenth Circuit.[10]  Because Petitioner's Plea Agreement contained an appeal-

waiver provision, the Government moved to enforce that waiver and sought dismissal of the

appeal.[11]  The Tenth Circuit enforced the waiver and dismissed the appeal on July 18, 2013.[12]

---

[7]Doc. 40.

[8]Presentence Investigation Report, Doc. 67 at 12–13.

[9]Docs. 61, 71.

[10]*United States v. Oviedo-Tagle*, 529 F. App'x 944 (10th Cir. July 18, 2013).

[11]*Id.*

[12]*Id.*

On October 17, 2014, Petitioner timely filed the pending motion under 28 U.S.C. § 2255.[13]

In his affidavit in support of his motion, Petitioner states that he cannot speak, read, or write English and that Mr. Works failed on at least three occasions to bring an interpreter when they discussed the case.[14]  Petitioner avers that on other occasions, Works brought a translator with whom Petitioner had trouble communicating.  Petitioner avers that although the Petition to Enter Plea of Guilty was written in Spanish and English, he was never furnished a copy, or a translated copy of his Plea Agreement or any other materials regarding the Government's case against him.  Based on the information communicated by the translator provided by Works, Petitioner understood that if he agreed to plead guilty, he would receive a sentence of between five and seven years, but if he did not plead guilty, he would likely face life imprisonment.

On June 30, 2015, the Court held an evidentiary hearing on the question of whether Petitioner's counsel was ineffective in assisting Petitioner in plea negotiations with the Government and whether execution of the Plea Agreement was made knowingly and voluntarily. Petitioner testified on his own behalf, with the assistance of an interpreter, but the Court finds that his testimony was at times confused and contradictory.  Petitioner testified that he retained Mr. Works after his brother hired Works to help him with traffic tickets, and that Works came to visit Petitioner when he was being held at the Leavenworth Detention Center-CCA ("CCA"). Petitioner testified that  Works told him about the discovery, police reports, videos, and audio evidence against him, but did not bring anything for him to view.  Petitioner testified that Works

---

[13]28 U.S.C. § 2255(f)(1) ("A 1-year period of limitation shall apply to a motion under this section.  The limitation shall run from . . . the date on which the judgment of conviction becomes final.").

[14]Doc. 441, Ex. 1.

never discussed the Sentencing Guidelines with him.  Petitioner asked Works about his offense level after other inmates told him he needed this information, but Works never told him what his offense level might be.  Petitioner testified that Works never explained the concept of relevant conduct to him, specifically, the relationship between the quantity of drugs attributed to Petitioner and his offense level under the Guidelines.  Petitioner testified that Works told him to plead guilty "for a pound and a half or two" of methamphetamine, and that he could be sentenced for up to two pounds.

Petitioner testified that Works told him that if he was convicted at trial, Petitioner would receive a sentence of seventeen years.  Petitioner claims that Works "brought him a plea for ten years," and if he signed it, the maximum Petitioner would receive was ten years (the mandatory minimum sentence), but since he did not have a criminal record, he could receive seven or five years.  Later, Works told Petitioner that he could receive as little as between three and five years, because he was a minimum participant and could cooperate with the Government.  Petitioner testified that Works never discussed with Petitioner what he thought the actual drug quantity was that he was pleading guilty to, and that he learned of the possibility of a twenty-five to thirty year sentence for the first time at his sentencing hearing.  Petitioner testified that he understood the difference between a possibility and a promise of a certain sentence, and when he pressed Works about whether it was true that he would receive between five and seven years, Works told him, "don't worry, trust me."  Petitioner understood that he was "guaranteed" a sentence of no more than ten years because it was his first offense, and the seven to three year range was a prediction below that ten-year maximum.  When asked by the Government whether that sentence depended upon the Government's recommendation for a reduction in a 5K1.1 motion, Petitioner testified

5

that Works told him the Government was happy with the information he gave them and was going to give him less time.

Petitioner, who required an interpreter at all court proceedings, testified that Works did not always bring an interpreter with him when he came to see Petitioner at CCA.  Petitioner testified that he had difficulty communicating with the male interpreter Works used, but no trouble with the female interpreters used by Probation and the Court.

Petitioner acknowledged that the Court questioned him extensively on the circumstances of the Plea Agreement, including that the Court was not bound by the Agreement, that his sentence would be between ten years and life imprisonment, that neither the Court nor Works could predict with certainty what sentence he would receive, that certain factors could increase his sentence, that he could be responsible for the amount of drugs attributed to his co-conspirators and that could increase his sentence, and that he was waiving his right to appeal or collaterally attack his conviction.  Petitioner conceded that the Court explained relevant conduct to him at the plea hearing.

Petitioner denied ever seeing the Plea Agreement in Spanish, going so far as to deny that the signature on the Petition to Enter Plea and the Plea Agreement was his signature, despite being executed in open court.  Petitioner did not recognize the affidavit he submitted in support of his motion, which stated that Works told him if he did not agree to plead guilty he would receive a life sentence, and admitted he could not read as it was prepared in English.

Petitioner was arrested on July 22, 2011, and was held at CCA during the course of the

federal proceedings.[15]  Works entered his appearance on August 10, 2011.[16]  Works filed and was

granted several motions to continue trial, during which time he and AUSA Greg Hough

exchanged emails and correspondence disclosing the Government's evidence and discussing a

possible plea agreement.[17]  On October 4, 2011, the Government provided Works with twenty-

seven discs containing discovery, including police reports, videos, and wiretap recordings.[18]  The

Government also provided Works with copies of debriefings of cooperating individuals.[19]  In

January 2012, Works suggested a plea to the gun and false identification charges, with dismissal

of the drug charges; the Government responded that Works should listen to the recordings in

which Petitioner and another individual "discussed bringing in 5-50 lbs of dope at a time with

the UC," and suggested that Petitioner "has some cards to play" if he pledd and cooperated by

providing drugs hidden at his house and information on numerous co-conspirators.[20]  The

Government sent a proposed plea agreement to Works on January 17, 2012.[21]  On April 2, 2012,

the Government sent Works five additional debriefings, describing the evidence against

Petitioner as "overwhelming."[22]  Works emailed the Government on May 9, 2012, to inform

---

[15]Doc. 6; Gov't Ex. 2.

[16]Doc. 7.

[17]Pet. Ex. 9.

[18]*Id.* at 0034.

[19]*Id.* at 0026, 0029, 0031.

[20]*Id.* at 0025.

[21]*Id.* at 0024

[22]*Id.* at 0016.

Hough that he was meeting with Petitioner and to expect a plea.[23]

Works testified that he met with Petitioner at CCA with an interpreter present five times between May 2012 and March 2013.[24]  During those meetings, only one of which was prior to the plea hearing, Works testified that he and Petitioner discussed discovery against Petitioner, including the twenty-seven discs.  Works explained that he would read, listen, and watch the respective discovery, and then go through it with Petitioner with the interpreters.  Works testified that he also discussed with Petitioner debriefings of cooperating individuals that were giving statements implicating Petitioner in drug transactions: 1) A.B.,[25] conducted July 19, 2012;[26] 2) B.V., conducted October 24, 2011;[27] 3) and R.M., conducted on February 24, 2012.[28] Works, who was unable to locate his case file for the underlying proceedings, could not recall specifically what day he discussed the debriefings with Petitioner.  A.B. stated that he purchased two pounds of methamphetamine from Petitioner in Denver, Colorado.  B.V. stated that he obtained a total of two pounds of methamphetamine from Petitioner.  And R.M. stated that from December 2010 to March of 2011, he obtained three to five ounces of methamphetamine per week from Petitioner, and from March 17, 2011, until the time Petitioner was arrested, he obtained between twenty and thirty ounces of methamphetamine per week from Petitioner.

---

[23]*Id.* at 0012.

[24]Gov't Ex. 2. The government submitted a log from CCA; there are no entries of Works visiting Petitioner alone, without an interpreter.

[25]The Court identifies these various cooperators by their initials.

[26]Gov't Ex. 4.

[27]Gov't Ex. 5.

[28]Gov't Ex. 7.

Works testified that all of this information is considered relevant conduct under the Sentencing Guidelines and that he discussed this information with Petitioner at CCA during his meetings with him.  These three statements comprise the relevant conduct calculations set forth in Paragraph 55 of the PSIR, and the overall drug amount attributed to Petitioner was 9.64 kilograms of methamphetamine.[29]

Works testified that Petitioner never complained about or told Works he had trouble understanding the interpreter Works brought to CCA.  Works stated that Petitioner would ask questions through the interpreter about the case and Works would answer all the questions through the translator.

Works confirmed that the Petition to Enter Plea is translated in both English and Spanish. Works testified that he would have reviewed the Petition with Petitioner prior to the plea hearing, but could not recall when he did so.  The Petition was filed in open court on May 25, 2012, at which time Petitioner signed it.  Works testified that he had an interpreter read the Plea Agreement in Spanish to Petitioner at CCA and ask him if he had any questions.  Petitioner also signed the Plea Agreement in open court.  Works stated he would have discussed the potential minimum and maximum sentence Petitioner could receive as a result of a plea or a trial.  Works denied Petitioner's claim that he guaranteed him a sentence of between five and seven years, stressing that he did not make even a prediction of what sentence that Petitioner could expect to receive.  Works explained to Petitioner that there was uncertainty in the sentencing process in federal court, that the Guidelines are complicated, and neither he nor the Court could predict what the range will be until after the PSIR is prepared.  Works stated that the could not predict

---

[29]Doc. 67.

what points would be given or removed, or even the base offense level.  Works explained

relevant conduct to Petitioner as "if he had conduct with other people involved in the conspiracy,

Probation could use that as an enhancement or an increase in the sentence proposed to the

Court."  Works testified that he did not estimate Petitioner's relevant conduct, and did not

believe that he told Petitioner he would be responsible for between one and two pounds of

methamphetamine.  Works explained to Petitioner that he could receive a potential reduction in

sentence based on the recommendation provided by the Government through a 5K1.1 motion,

and that it was entirely within the Government's discretion what amount of sentence reduction it

would recommend.   Works further testified that Petitioner understood his explanation that the

sentence he received would be based on the amount of relevant conduct and the Government's

recommendation, if any, under the 5K1.1 motion.

On cross-examination by Petitioner's counsel, Branden Bell, Works testified that he

received the three debriefing reports from the Government via email.  Works admitted that he

received the B.V. debriefing document on November 29, 2011, indicating that there was at least

.9 kilograms of methamphetamine attributable to Petitioner; that he received the R.M. debriefing

document on April 2, 2012, indicating there was at least 7.8 kilograms of methamphetamine

attributable to Petitioner; and thus, as of April 2, 2012, he was aware that the total quantity of

methamphetamine attributable to Petitioner under the Guidelines was 8.7 kilograms.  Bell then

walked Works through the Sentencing Guidelines table in effect at the time Petitioner entered his

plea, calculating Petitioner's base offense level for 8.7 kilograms of methamphetamine at level

36, plus a two-level enhancement for a firearm involved in the offense, plus a two-level

enhancement because the methamphetamine came from Mexico, for a total offense level of 40.

10

With a three-level credit for acceptance of responsibility, Works admitted that the facts he was aware of at the time of the plea indicated that the likely total offense level would be 37, with a criminal history of I, resulting in a Guideline range of 210 to 262 months.[30]  Works admitted that he never performed this calculation with Petitioner. Works conceded that he discussed in general how the Guidelines worked, but did not explain to Petitioner how they might specifically apply to him.  Works testified that although he told Petitioner that B.V. and R.M. gave statements that they bought methamphetamine from Petitioner, he did not inform Petitioner of any specific quantify of methamphetamine allegedly involved.

Works admitted that he was surprised when the PSIR calculated a sentence of 324 to 405 months, and conceded that he filed nearly fifty objections to the PSIR, including the firearm enhancement, ultimately withdrawing all the objections at the sentencing hearing after the Government indicated that the objections might constitute obstruction and jeopardize Petitioner's credit for acceptance of responsibility.[31]  Works stated that he does not do a calculation of any defendant's potential sentence prior to the plea, and generally waits until the PSIR to review whether the sentence is an accurate application of the Guidelines or not.  At sentencing, Works requested the Court to exercise its discretion under the 5K1.1 motion and impose a sentence of between three and five years.

Works testified that he explained to Petitioner the benefits of cooperating with the Government were, generally, less time in prison.  Works did not get specific with how much of a reduction Petitioner could expect for cooperating, explaining that he could not predict what the

---

[30]The PSIR later imposed a four-point enhancement for Petitioner's role in the offense.

[31]Objection to PSIR, Doc. 49; Sentencing Hrg. Tran., Doc. 86.

Government would recommend ahead of time, and that it depended on the amount of cooperation.  Works stated that he typically has a conversation with his clients explaining the range the Government might recommend as between 25 and 50%, depending on the level of cooperation, with 50% being rare.

## III.   Discussion

Petitioner asserts a single claim: that as a result of counsel's ineffective assistance he entered his plea unknowingly and involuntarily.  Petitioner argues that during initial plea negotiations, he was induced into entering a plea agreement by Works' promise of a sentence between five and seven years.  Petitioner also contends that his counsel failed to provide an interpreter during conferences regarding the plea negotiations and failed to provide a translated copy of the plea agreement.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[32]  In *Missouri v. Frye*, the Supreme Court affirmed that a criminal defendant's right to effective assistance of counsel extends to the plea bargaining process.[33]  The Court observed "[i]n today's criminal justice system, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant."[34]  The Court reasoned that

> [t]he potential to conserve valuable prosecutorial resources and for
> defendants to admit their crimes and receive more favorable terms

---

[32]U.S. Const. amend. VI; *Kansas v. Ventris*, 556 U.S. 586 (2009).

[33]132 S. Ct. 1399, 1404 (2012).

[34]*Id.* at 1407.

> at sentencing means that a plea agreement can benefit both parties. In order that these benefits can be realized, however, criminal defendants require effective counsel during plea negotiations. Anything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him.[35]

A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[36]  First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[37] Second, a defendant must also show that his counsel's deficient performance actually prejudiced his defense.[38]  "To show prejudice in the guilty plea context, the defendant must establish that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial.'"[39]  A defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[40]

### A.      Constitutionally Deficient Performance

---

[35]*Id.* at 1407–08 (internal quotation marks and citations omitted).

[36]466 U.S. 668 (1984).

[37]*Id.* at 688.

[38]*Id.* at 687.

[39]*Heard v. Addison*, 728 F.3d 1170, 1176 (10th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)).

[40]*Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000) (quoting *Strickland*, 466 U.S. at 697) ("The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'"); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

Here, the Court is presented with conflicting testimony.  On one hand, Petitioner claims Works promised him that if he pleaded guilty he would receive a sentence below the ten-year mandatory minimum, specifically five to seven years, and that if he proceeded to trial he would receive a sentence of seventeen years.  On the other hand, Works denies that he made any promises to Petitioner about his sentence calculation.  In fact, Works testified that he avoided making even an estimated calculation of Petitioner's potential Guideline sentence range, limiting his discussion of the potential sentence to only the minimum and maximum time Petitioner could receive, and explaining other sentencing issues in the most general terms.

To establish the first prong of the *Strickland* test under Petitioner's version of the facts, he must show that his counsel materially misrepresented the consequences of the plea.[41]  Nothing less will suffice as the Tenth Circuit has repeatedly held that "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."[42]  Petitioner must establish that his counsel made "blatant and significant misrepresentations about the amount of time [defendant] would spend in prison," which are not predictions or estimates, but rather a promise that Petitioner relied on when he entered his plea.[43]

Petitioner testified that Works repeatedly assured him that he would receive a sentence below the ten-year mandatory minimum, as he was cooperating with the Government.  Although

---

[41]*United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005).

[42]*United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993); *Silva*, 430 F.3d at 1099.

[43]*Mendoza v. Hatch*, 620 F.3d 1261, 1272 (10th Cir. 2010) (finding plea was not knowing or voluntary when counsel repeatedly stated that he was the best attorney, that he had a special relationship with the judge, and that the judge had agreed to impose a three-year sentence even though he was facing up to thirty years' imprisonment).

Petitioner's credibility was called into question over his testimony about signing the plea agreement and affidavit, he was adamant about the specific amount of time Works represented he would receive if he accepted the plea—between seven and five years.[44]  Notably, Works argued at the sentencing hearing for a three to five year sentence, despite the PSIR calculation of a total offense level of 41 months, with a Guideline range of 324-405 months.

Conversely, Works testified that he made ***no*** sentencing predictions to Petitioner, and merely explained the concept of sentencing and relevant conduct in the most general terms. Although Works discussed the bottom line of ten years to life with Petitioner, he concedes that he did not calculate or discuss with Petitioner his actual sentencing exposure.  Significantly, Works testified that he did not discuss with Petitioner the amount of drugs the cooperating witnesses testified they had purchased from Petitioner, and his potential exposure for relevant conduct of over nine kilograms of methamphetamine.  In *United States v. Washington*,[45] the Tenth Circuit assessed whether the defendant's attorney was ineffective in the sentencing process, and addressed the implications of defense counsel's failure to understand, communicate, or effectively advise the exposure a defendant faces under the Sentencing Guidelines at the plea bargaining stage for comparison.  The Tenth Circuit articulated a measurement for counsel's performance at the plea bargaining stage: "[ k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to

---

[44]Although Works denies discussing specific calculations with Petitioner, the Court notes that seventeen years corresponds with the low end of the Guidelines range, 210 months, for a total offense level of 37, and that seven and five years corresponds with 25% and 50% of the ten-year mandatory minimum, the range of reduction Works testified he would expect if a defendant cooperated under a 5K1.1 motion.

[45]619 F.3d 1252 (10th Cir. 2010).

15

plead guilty."[46]  By Work's own admission, a comparative view of sentencing exposure is missing in this case.

Under either circumstance, if true, the Court is presented with a colorable claim that Mr. Works' representation fell below an objective standard of reasonableness under the first prong of *Strickland*.  The Court does not resolve the conflicting testimony, however, because even if Works' performance was unreasonable, Petitioner cannot satisfy the second prejudice prong of the *Strickland* test to prevail on his ineffective assistance of counsel claim.

### B.    *Strickland* Prejudice

To prevail on the prejudice prong, a defendant must show that there is "a 'reasonable probability' that he 'would not have pleaded guilty and would have insisted on going to trial' but for counsel's errors."[47]  The court is required to make a holistic inquiry into all the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial.[48]  Mere allegations that the petitioner would have insisted on going to trial, although necessary, is insufficient.[49]  "Proof of prejudice requires a petitioner to show that 'a decision to reject the plea bargain would have been rational under the circumstances.'"[50]  To determine rationality, the court should assess "objective facts specific to a petitioner, such as age, the length of the sentence he faced under the terms of the plea deal, the prospect of minimizing

---

[46]*Id.* at 1259–60 (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)).

[47]*Heard v. Addison*, 728 F.3d 1170, 1175–76 (10th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

[48]*Id.* at 1183.

[49]*Id.* at 1184.

[50]*Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

16

exposure to other charged counts, and so on."[51]  The Tenth Circuit "remain[s] suspicious of bald,

post hoc and unsupported statements that a defendant would have changed his plea absent

counsel's errors."[52]

Petitioner's showing of prejudice falls short.  Petitioner offers the following statement in

his affidavit:

> Had I known that I was pleading guilty with no specific sentence
> imposed, I would not have pled guilty, . . . and instead, would have
> insisted on going to trial.  When I was arrested, there were no
> drugs in my possession, nor in my car, nor where [sic] any found
> in a subsequent search of my residence.[53]

Petitioner offered a variation on that claim when he testified at the evidentiary hearing, stating

that Works always told him that if he was convicted at trial, he would receive a seventeen-year

sentence, otherwise he would have proceeded to trial.

Petitioner does not, however, elaborate or explain how or why he might have succeeded

if he proceeded to trial.  The errors Petitioner alleges counsel made in this case do not involve

the merits of his case, such as a failure to investigate potentially exculpatory evidence or advise

him of a potential affirmative defense to the charges.[54]  In *Heard v. Addison*, the Tenth Circuit

held that the defendant established the prejudice prong because there were "several ways

---

[51]*Id.* at 1183.

[52]*Id.* at 1184.

[53]Doc. 96 at 2.

[54]*See Heard*, 728 F.3d at 1183 ("Our assessment of this prong will of necessity 'depend in large part' on objective factors such as whether an unmade evidentiary or legal discovery 'likely would have change the outcome of a trial,' or whether a defense about which the defendant was not advised 'likely would have succeeded at trial.'" (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Heard's lawyer credibly could have favorably 'changed the outcome' of Heard's case had she made reasonable use of defenses implicit in two cases."[55]  Here, Works' alleged mistakes did not affect whether or not Petitioner would be found guilty.  Although Petitioner contends that no drugs were found in his possession, he was charged with conspiracy to possess with intent to distribute methamphetamine, and the Government had statements from numerous cooperating witnesses who indicated that Petitioner sold them large amounts of methamphetamine, which they in turn distributed and/or sold.

Petitioner also ignores the benefits he received from the Plea Agreement.  In exchange for his guilty plea, the Government dismissed all but Count 5 of the Superseding Indictment, including the firearm charge in Count 1.  Defendant also received a three-point reduction in his offense level for acceptance of responsibility.  And finally, the Government filed a § 5K1.1 motion recommending a 24-month departure, or 300 month sentence, despite the lack of substantial assistance by Petitioner.  Indeed, the Government indicated at the sentencing hearing that subsequent to his plea, Petitioner gave many conflicting statements and representations that made it difficult for the AUSA Hough to sponsor him as a witness in a related criminal case; ultimately, Petitioner's testimony led to a "house of cards falling" with respect to a drug trafficking conspiracy that warranted the recommended sentence reduction.[56]  If Petitioner had gone to trial and been found guilty, he faced sentencing on multiple counts, and would not have received the same reduction in his offense level for acceptance of responsibility or substantial assistance.  Considering the benefits Petitioner received by pleading guilty and the lack of any

---

[55]*Id.* at 1184.

[56]Doc. 86 at 5–6.

indication that he likely would have succeeded at trial, the Court has "trouble concluding that a decision to go to trial in [Petitioner's] case would have been rational."[57]

Nor has Petitioner shown that Works' actions caused him to plead guilty. Unlike the situation in *Washington*, where the defendant rejected the plea offer and proceeded to trial without a plea colloquy that might have mitigated or undercut the erroneous advice given by counsel,[58] in this case both the Plea Agreement and this Court advised Petitioner of the maximum sentence he could receive and that the Court had the final discretion to impose any sentence up to the statutory maximum of life. During the plea colloquy, Petitioner confirmed that there were no additional oral agreements other than the written Plea Agreement; the prosecution stated that in exchange for a plea of guilty, the Government would recommend that Petitioner receive full credit for acceptance of responsibility, not oppose a sentence at the lower end of the Guidelines range, and file a § 5K1.1 motion to reduce his sentence to reflect his substantial assistance.[59] The plea colloquy sufficiently informed Petitioner of the potential sentence that he could face, and after being so informed, he pleaded guilty. When addressing the Plea Agreement between the parties, the Court explained that it was not bound by any recommendations of the parties:

> THE COURT: All right. And the plea agreement includes certain recommendations that you and the government agree should be made to me about your sentencing, recommendations that are

---

[57]*Heard*, 728 F.3d at 1184.

[58]619 F.3d at 1259; *see also Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) ("A substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonably probability that a properly informed and advised defendant would have accepted the prosecution's offer.").

[59]Doc. 85 at 5–7.

favorable to you.  It is important, thought, that you understand, Mr.
Oviedo, that I do not have to follow those recommendations.  And
if for some reason I do not, that would not give you the right to
withdraw your plea.  Do you understand that?

THE DEFENDANT: Yes.[60]

The Court also explained the Sentencing Guidelines and how the Court uses the

Guidelines to determine an appropriate sentence.  After the Court explained many of the factors

that it uses to determine the appropriate Guidelines range, including relevant conduct and

criminal history, the Court explained that no one could predict with certainty what sentence

Petitioner would receive.  The Court also explained that Petitioner could receive a sentence of up

to life imprisonment, with a mandatory minimum of ten years, and emphasized that neither

Petitioner's counsel nor the prosecution could predict the sentence he would receive: :

THE COURT: All right.  So sentencing is a complicated process.
What I mean is I cannot predict to you with certainty what
sentence you'll receive.  Mr. Works and Mr. Hough cannot predict
with certainty what sentence you'll receive.  Do you understand
that?

THE DEFENDANT: Yes.

THE COURT: I can tell you with certainty that the crime comes
within a range under the statute, a range of penalties, so I can tell
you that with certainty today.  Mr. Hough, will you tell us what the
statutory penalties are?

MR. HOUGH: Yes, Your Honor.  It would not be less than 10
years, nor more than life imprisonment; term of supervised release
of at least five years, in addition to any term of imprisonment
ordered by the Court; a fine of $10 million; and a mandatory

---

[60]*Id*. at 8.

special assessment in the amount of $100.

THE COURT: All right.  So, Mr. Oviedo, I can tell you with certainty that I will be imposing a sentence of not more than life in prison and not less than 10 years in prison.  There are some exceptions, though, to the mandatory minimum of 10 years in prison.  Generally speaking, I have to sentence you to at least 10 years of actual prison time.  But there are two exceptions.  One is what we call the safety valve exception, and it applies to people that have virtually no criminal history.  It also applies—it applies if you have not used a firearm or done an act of violence as part of the crime.  I'm guessing in this case because there's a firearm involved you would not qualify for this exception. . . . The other exception is the substantial assistance exception.  And the way it works is if you were to cooperate with the government and the government thought your cooperation gave them substantial assistance, before sentencing they would file a motion with the Court and tell me that.  And I would then, under those circumstances, have the authority to sentence you to something less than 10 years, if I thought that was appropriate.  But keep in mind that it requires cooperation with the government and it requires the government evaluating and deciding that your cooperation is substantial.  If the government decided that the cooperation wasn't enough and they didn't file that motion with the Court, I would have no authority to give you a sentence under 10 years.  But if they filed that motion, I would have that authority.  So keep that in mind, that you are facing a mandatory minimum of 10 years unless one of the exceptions applies. . . . Do you understand that?

THE DEFENDANT: Yes.[61]

These statements made under oath show that Petitioner understood that no one could predict his sentence, that the Government had discretion in determining the extent of substantial assistance, and that he could receive a sentence of up to life imprisonment—close to the 300 month sentence he ultimately received—and still entered his plea.  Petitioner's complaints about

---

[61]*Id.* at 14–18.

Works having provided deficient translation and/or interpretation services do not affect this conclusion as they are neither credible nor supported by the record.  There is no evidence that Works visited Petitioner at CCA without an interpreter in tow, the Petition to enter Plea of Guilty was written in both Spanish and English, and Petitioner had the aid of a court interpreter during the change of plea hearing.  Thus, even if Works' actions were objectively unreasonable, Petitioner cannot show that his actions caused him to plead guilty.  Accordingly, the Court concludes Petitioner failed to demonstrate prejudice, and relief is not warranted.[62]

**IV .    Certificate of Appealability**

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[63]  A petitioner may satisfy his burden only if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[64]  A petitioner is not required to demonstrate that his appeal will succeed to be entitled to a COA.  He must, however, "prove something more than the absence of

---

[62]*See Hamilton v. United States*, 510 F.3d 1209, 1216 (10th Cir. 2007) (defendant could not show he was prejudiced in § 2255 context where he acknowledged in the plea agreement and plea colloquy that the district court would determine the sentence and could impose a much greater sentence than he expected; that any estimate of the likely sentence received from any source was just a prediction, not a promise; that the district court had the final discretion to impose any sentence up to the statutory maximum; and the district court told him at the plea colloquy that it could impose a sentence of up to life).

[63]28 U.S.C. § 2253(c)(2).  The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability.  *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[64]*Said v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).

22

frivolity or the existence of mere good faith."[65]  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims.  In fact, the statute forbids it."[66]  For the reasons detailed in this Memorandum and Order, Petitioner has not made a substantial showing of the denial of a constitutional right, and the Court denies a COA as to its ruling on his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Alejandro Oviedo-Tagle's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 95) is DENIED; Petitioner is also denied a COA.

**IT IS SO ORDERED.**

Dated: <u>August 17, 2015</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[65]*Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

[66]*Id.* at 336; *see also United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005).